## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **SCOTT R.,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | **No. 1:21-cv-00067-GZS** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,**[1] | ) | |
| | ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ improperly rejected the opinion of agency examining psychologist Patricia Kolosowski, Ph.D., and failed to account for limitations in concentration, persistence, or pace and social interaction in assessing his mental residual functional capacity (RFC). *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 21) at 6-20. I find no reversible error and, accordingly, recommend that the court affirm the decision.[3]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[3] In his statement of errors, the plaintiff also sought remand on the alternative constitutional basis that the ALJ and the Appeals Council lacked the authority to adjudicate his case. *See* Statement of Errors at 21-23. However, at oral argument, his counsel conceded that the timing of the agency's actions prevent the plaintiff from making the requisite showing of harm. He asserted that, as a result, the plaintiff can prevail on his constitutional claim only if the court agrees that the commissioner waived any defense with respect to the Appeals Council (*versus* the ALJ) by addressing the Appeals Council only in a footnote. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition")

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of iliosacral arthritis, post-traumatic stress disorder (PTSD), anxiety disorder, attention deficit hyperactivity disorder (ADHD), and depressive disorder, Finding 2, Record at 14; that he had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he was able to understand and remember simple instructions and tasks but not complex information, could work in two-hour blocks performing simple tasks over the course of a normal workday/workweek, was not able to work with the public but could work with co-workers and supervisors, and could adapt to simple changes, Finding 5, *id*. at 16; that, considering his age (39 years old, defined as a younger individual, on the date his SSI application was filed, July 15, 2018), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 20-21; and that he, therefore, had not been disabled from July 15, 2018, the date his application was filed, through the date of the decision, July 28, 2020, Finding 10, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion

---

(ECF No. 26) at 11-23 & n.4; Plaintiff's Reply Brief ("Reply") (ECF No. 36) at 2-3. I find no waiver. In his statement of errors, the plaintiff also focused on the ALJ and mentioned the Appeals Council only in passing, indicating (as does the commissioner in his Opposition) that the same analysis applies to both. *See* Statement of Errors at 22; Opposition at 17 n.4.

2

drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Background

Dr. Kolosowski examined the plaintiff on October 25, 2018, concluding:

> On interview, [the plaintiff] was polite and cooperative. His grooming was fair. He reported he does not do very much and is uncomfortable when he leaves the house. He presents as being able to understand and comply with simple tasks presented to him. However, he presents as having limited concentration, focusing, and ability to persevere. He would have issues with more complicated-type tasks. He presents as having difficulties interacting with others. He primarily interacts with his very close family members. At times he cannot interact with them. He would have issues dealing with others because of his emotional issues. Additionally, his many medical problems complicate his ability to work in many situations. However, this would be better evaluated by a physician. He does not appear as able to persist and function in a work situation.

Record at 764-65. As relevant here, Dr. Kolosowski noted that the plaintiff reported to her that he did not drive and, when asked about hallucinations, "reported often hearing voices mumbling" and "will ask someone if they have talked and they say no." *Id*. at 762, 764.

Agency nonexamining consultants Brian Stahl, Ph.D., and David Houston, Ph.D., reviewed the plaintiff's claim at the initial and reconsideration levels of review on November 9, 2018, and March 20, 2019, respectively. *See id*. at 61-64, 69-72. Dr. Stahl indicated that the Kolosowski statement was based on the plaintiff's report and that the plaintiff's "presentation and report [were]

not entirely consistent throughout the file." *Id*. at 61. Dr. Stahl further found, and Dr. Houston concurred, that the plaintiff's statements regarding his symptoms were only "[p]artially consistent" with "the total medical and non-medical evidence in [the] file[,]" explaining that the inconsistencies included his report that he did not drive, although his wife had reported that he did, and his report to Dr. Kolosowski, but not to his primary care physician, of "hallucinatory experiences[.]" *Id*. at 63, 70.

Turning to the so-called "Paragraph B criteria" – the "four broad [mental] functional areas" pursuant to which the severity of medically determinable mental impairments is gauged, *see* 20 C.F.R. § 416.920a(c)(3)-(4), Drs. Stahl and Houston assessed moderate limitations in the abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself, *see* Record at 62, 69. They then assessed the plaintiff's mental RFC, deeming him "able to understand and remember simple instructions and tasks[,]" "able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek[,]" "not able to work with the public but can work with coworkers and supervisors[,]" and able to adapt to "simple changes" per Dr. Stahl and to "routine changes" per Dr. Houston. Record at 63-64, 71-72.

During the plaintiff's July 13, 2020, hearing before the ALJ, the ALJ informed him that he wanted to focus on "some inconsistencies" between the plaintiff's records and his testimony at hearing. *Id*. at 49. The ALJ noted that, in contrast to what the plaintiff told Dr. Kolosowski, he had previously reported that he drove and, upon visiting a treating source nine days prior to the Kolosowski evaluation, had denied hallucinations, delusions, paranoia, or other psychotic symptoms. *See id*. at 49-51. The plaintiff testified that he had interpreted a previous question whether he drove as meaning whether he had a driver's license, which he did not, *see id*. at 50, and

4

that he had previously been "very, very determined" that he "was not seeing things" but that he and his wife "had been having a hard time" because he kept thinking she was talking to him when she was not, and "divorce was on the line[,]" *id*. at 51. He added that he had had difficulty sleeping, stating, "I mean someone stays awake for four or five days and you only get an hour sleep you start hallucinating." *Id*. at 52. Finally, he testified, "when I went in for the Social Security doctor whatever they asked me I tried to answer the best I can[,]" and "I myself really believed that I was right." *Id*.

The ALJ deemed the RFC findings of Drs. Stahl and Houston "persuasive" because they were "consistent with and supported by the objective treatment record as a whole[,]" "prepared by subject matter experts familiar with the disability evaluation process[,]" "not contradicted by treating provider statements[,]" and "consistent with the [plaintiff]'s limited mental health treatment throughout the period under adjudication[,]" including his repeated refusal of counseling, and his "cooperative[ness] with examining providers despite testimony that he does not like to be around people." *Id*. at 19 (citations omitted). He deemed the Kolosowski opinion "not persuasive as it is based, at least in part, upon reporting by the [plaintiff] that is inconsistent with his contemporaneous treatment notes." *Id*. at 19-20.[4]

The ALJ adopted the "B criteria" and mental RFC findings of Drs. Stahl and Houston *in toto*. *Compare id*. at 15-16; Finding 4, *id*. at 16 *with id*. at 62-64, 69, 71-72.

---

[4] In that context, the ALJ noted that he found the plaintiff's "testimony trying to explain these inconsistencies" as "not very convincing with respect to his hallucinations[,] noting that "[i]f they were as bothersome as he was alleging, he should have raised them with his doctor." Record at 20.

## B.  Analysis

### 1.  Asserted Improper Rejection of Kolosowski Opinion

The plaintiff first contends that the ALJ violated 20 C.F.R. § 416.920c and improperly evaluated raw medical evidence in rejecting the entirety of "Dr. Kolosowski's comprehensive 4-page psychological evaluation" on two "specious" grounds, requiring remand.  Statement of Errors at 6-15.  I find no reversible error.

First, the regulation on which the plaintiff relies pertains to the articulation of "consideration of *medical* opinions[,]" 20 C.F.R. § 416.920c(b) (emphasis added), defined, as relevant here, as "statement[s] from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[,]" *id.* § 416.913(a)(2)(ii).  As the commissioner notes, *see* Opposition at 6, Dr. Kolosowski did not specify what the plaintiff could still do despite his impairments.  Rather, she primarily identified work-related difficulties that he might have.  *See* Record at 764-65.

Second, the ALJ did not construe raw medical evidence in rejecting the Kolosowski opinion.  Rather, he reasonably determined that discrepancies between the plaintiff's reports to Dr. Kolosowski and those he previously had made to others (including to a treating source) called the Kolosowski opinion into question.  *See, e.g., Tyler H. v. Saul*, No. 1:19-cv-00005-GZS, 2019 WL

2648446, at *4-5 (D. Me. June 27, 2019) (rec. dec., *aff'd* July 15, 2019) (ALJ did not impermissibly interpret raw medical evidence in weighing which expert RFC opinions to credit).[5]

## 2. Asserted Failure to Account for Moderate Mental Limitations

The plaintiff next argues that, in assessing his mental RFC, the ALJ failed to account for moderate limitations in concentration, persistence, or pace (CPP) and social interaction, warranting remand. *See* Statement of Errors at 15-20. At oral argument, his counsel elaborated that the ALJ omitted, without adequate explanation, six limitations assessed by both Drs. Stahl and Houston – moderate limitations in the plaintiff's abilities to "maintain attention and concentration for extended periods[,]" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances[,]" "work in coordination with or in proximity to others without being distracted by them[,]" "complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number and length of rest periods[,]" "accept instructions and respond appropriately to criticism from supervisors[,]" and "respond appropriately to changes in the work setting[,]" Record at 64, 71-72, as well as a seventh moderate limitation assessed by Dr. Houston in the plaintiff's ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes[,]" *id*. at 72.

As a threshold matter, as the commissioner notes, *see* Opposition at 9, the moderate limitations on which the plaintiff relies are not RFC findings, which describe "the most you can

---

[5] Indeed, First Circuit jurisprudence focuses on the issue of interpretation of raw medical evidence *to determine a claimant's RFC*. *See, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"); *Donna G. v. Saul*, 1:18-cv-00456-DBH, 2019 WL 2648447, at *2-4 (D. Me. June 27, 2019) (rec. dec., *aff'd* July 15, 2019) (remand required when ALJ rejected sole expert mental RFC opinion of record and impermissibly construed raw medical evidence to assess claimant's mental RFC). Plainly, in this case, the ALJ did not interpret raw medical evidence to craft the plaintiff's mental RFC: he adopted the mental RFC findings of Drs. Stahl and Houston. *See* Record at 19.

still do despite your limitations[,]" 20 C.F.R. § 416.945(a)(1).  Instead, as the form completed by Drs. Stahl and Houston makes clear, "the actual mental [RFC] assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion."  Record at 63, 71.  The ALJ adopted those narrative discussions *in toto*, thereby omitting no mental RFC finding of either Dr. Stahl or Dr. Houston.

That said, as the plaintiff notes, this court has found reversible error in ALJs' failure to adequately reflect moderate CPP or social interaction limitations in mental RFC findings.  *See* Statement of Errors at 15-20 (citing *Valari M. v. Soc. Sec. Admin. Comm'r*, 2:18-cv-00342-JDL, 2019 WL 4277783 (D. Me. Sept. 10, 2019); *Henderson v. Astrue*, No. 2:10-cv-122-GZS, 2011 WL 1130880 (D. Me. Mar. 25, 2011) (rec. dec., *aff'd* Apr. 12, 2011); *McHugh v. Astrue*, Civil No. 09-104-BW, 2009 WL 5218059 (D. Me. Dec. 30, 2009) (rec. dec., *aff'd* Jan. 20, 2010); *Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009)).[6]

Yet, as the commissioner observes, *see* Opposition at 9, this court recently underscored that it has "repeatedly upheld limitations to simple, routine and/or repetitive work when the claimant has been found to be moderately limited in the area of [CPP,]" *Sarah B. v. Saul*, No. 2:19-cv-00267-LEW, 2020 WL 2549250, at *4 (D. Me. Apr. 23, 2020) (rec. dec., *aff'd* May 18, 2020) (citation and internal punctuation omitted), and that "it is the absence of explication by the decision-maker of the reasoning leading from such limitations, rather than the fact that such a conclusion was drawn, that requires remand[,]" *id*. (quoting *Henderson*, 2011 WL 1130880, at *2) (internal punctuation omitted).[7]

---

[6] At oral argument, the plaintiff's counsel also cited *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997 (D. Me. Sept. 19, 2016), which he described as on point with respect to the ALJ's omission of any limitation in working with co-workers and supervisors.

[7] The claimant in *Sarah B*. also cited *Valari M*. and *McHugh*.  *See Sarah B*., 2020 WL 2549250, at *4.

The plaintiff contends that in this case, as well, the ALJ failed to explain his omission from his RFC determination of the seven moderate CPP and social interaction limitations at issue. *See* Statement of Errors at 19. However, in so arguing, he overlooks pertinent portions of the ALJ's decision.

In adopting the findings of Drs. Stahl and Houston that the plaintiff had a moderate limitation in CPP, the ALJ noted that (i) the plaintiff reported that "his hobbies include watching television[,]" (ii) Dr. Kolosowski "noted that [the plaintiff] was able to comply with simple tasks presented to him[,]" for example, repeating three words in short delay, recalling two of the three on longer delay, and spelling "cat" backwards, although he could not spell "world" backwards, (iii) the plaintiff's "thought content [wa]s described as within normal limits and his recent and remote memory [as] intact[,]" and (iv) the plaintiff "repeatedly denied hallucinations during mental health treatment appointments." Record at 15. The ALJ elsewhere observed that, during a screening evaluation, the plaintiff "easily performed serial 3s, could name simple objects, follow simple instructions, tell left from right, write a sentence, and copy a geometric shape/clock." *Id.* at 18 (citation omitted). These observations adequately explain, and are consistent with, the ALJ's determination that, as found by Drs. Stahl and Houston, the plaintiff retained the capacity to work in two-hour blocks performing simple tasks over the course of a normal workday/workweek. *See* Finding 4, *id*. at 16.[8]

Likewise, in adopting the findings of Drs. Stahl and Houston that the plaintiff had a moderate limitation in social interaction, the ALJ noted that (i) the plaintiff's "treatment providers d[id] not indicate that he is regularly accompanied by a chaperone[,]" (ii) the plaintiff reported

---

[8] The plaintiff does not argue that Drs. Stahl and Houston failed to explain their translation of their CPP limitations into their assessed mental RFCs. *See* Statement of Errors at 15-20. In any event, they noted, in explaining their mental RFC findings, that the plaintiff drove, shopped, managed money, and watched television. *See* Record at 64, 72.

"that he has never been fired or laid off from a job because of problems getting along with others[,]" (iii) "Dr. Kolosowski described the [plaintiff] as polite and cooperative[,]" (iv) the plaintiff "report[ed] that he ha[d] been married for five years[,]" and (v) the plaintiff "reported to Dr. Kolosowski that he sometimes goes to the store." *Id.* at 15.  The ALJ further stated, in relevant part, that the plaintiff had been noted to be "cooperative and engaged in the [screening] interview." *Id.* at 18.  These observations adequately explain, and are consistent with, his determination that, as found by Drs. Stahl and Houston, the plaintiff retained the capacity to work with co-workers and supervisors.  *See* Finding 4, *id.* at 16.[9]

The ALJ's reliance on the mental RFC findings of experts, coupled with his discussion of the evidentiary support for those experts' translation of the moderate CPP and social interaction limitations they assessed into mental RFC findings, distinguishes this case from *Valari M.*, *Parker*, *Henderson*, *McHugh*, and *Maldonado*.  *Compare Valari M.*, 2019 WL 4277783, at *4 (remand warranted when, *inter alia*, ALJ crafted claimant's mental RFC from raw medical evidence, failing to "explain how the medical data she described translated to the limitations she imposed in the mental RFC"); *Parker*, 2016 WL 4994997, at *5-6 (remand warranted based on series of errors, including failures on part of Dr. Stahl to explain certain findings, the ALJ's omission of some of Dr. Stahl's limitations despite purporting to give the Stahl opinion great weight, and the ALJ's purported crediting of two contrary opinions); *Henderson*, 2011 WL 1130880, at *2-3 (remand warranted in view of "the minimal, conclusory explanation given" by ALJ for translation of moderate CPP limitations into RFC finding); *McHugh*, 2009 WL 5218059, at *4 n.4 (remand

---

[9] Again, the plaintiff does not argue that Drs. Stahl and Houston failed to explain their translation of their social interaction limitations into their assessed mental RFCs.  *See* Statement of Errors at 15-20.  In any event, they noted, in explaining their mental RFC findings, that the plaintiff was polite and cooperative during his examination by Dr. Kolosowski and cooperative and engaged at his primary care physician's office.  *See* Record at 64, 72.

10

warranted when, *inter alia*, ALJ had not relied on expert's translation of a moderate CPP limitation into an RFC finding); *Maldonado*, 2009 WL 1885057, at *4 (remand warranted when ALJ afforded physician's report "cursory treatment" and failed to mention the findings of an agency nonexamining psychologist or the results of a psychiatric evaluation, raising concern that ALJ "ignore[d] strong evidence of an impairment of the ability to concentrate or persist with a task" that might be "inconsistent" with the ALJ's only mental RFC finding – a limitation to unskilled work).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of February, 2022.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

11